```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   YVETTE BUTLER,                                           :
                                                            :    MEMORANDUM
                                   Plaintiff,               :    DECISION AND ORDER
                                                            :
                - against -                                 :    12 Civ. 1791 (BMC)
                                                            :
   COCA-COLA REFRESHMENTS USA,                              :
   INC.,                                                    :
                                                            :
                                   Defendant.               :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Plaintiff brings this employment discrimination action under 42 U.S.C. § 1981, alleging that she was subjected to a racially hostile work environment and then terminated in retaliation for complaining about it. Defendant has moved for summary judgment, arguing primarily that her hostile work environment claim is time-barred and that the retaliation claim fails for a variety of other reasons. For the reasons set forth below, defendant's motion is granted.

**I. The Hostile Work Environment Claim**

Plaintiff's response to defendant's motion as to her hostile work environment claim raises some issues about her counsel's conduct before the Court. I had explained at the premotion conference that one of the purposes of the conference was to narrow the issues that would be raised in the motion, if possible, so that the parties would not waste their or the Court's time on issues as to which the outcome was clear.[1] At that time, plaintiff's complaint included not only

---

[1] I had obtained, as my Individual Practice Rules require, detailed letters from the parties in advance of the premotion hearing in which each set forth what the record was likely to show and why their respective positions had merit. Thus, as I advised the parties at the premotion conference, the conference was effectively oral argument on defendant's motion.

hostile work environment and retaliation claims, but a claim for discriminatory termination of her employment. It soon became apparent at the conference, however, that plaintiff would be unable to offer admissible evidence to raise a factual issue concerning discriminatory termination. As discussed more fully below, her termination occurred after repeated disciplinary measures for lateness, her acceptance of a "Last Chance Agreement," and her violation of the terms of that agreement. Her termination "for cause" had been grieved and upheld by a neutral arbitrator – a "highly probative," although not dispositive, factor in determining whether a plaintiff would be able to state a *prima facie* case of discrimination. See Collins v. New York City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002). When it became apparent that there was no admissible evidence to suggest a discriminatory motive behind plaintiff's termination, plaintiff's counsel unambiguously agreed to withdraw the discriminatory termination claim. The record on this could not be clearer; counsel stated "We will withdraw that claim."

Defendant, therefore, did not move against plaintiff's discriminatory termination claim because, following the premotion conference, it was no longer in the case. Although the possible detrimental consequence that the withdrawal of the discriminatory termination claim would have on plaintiff's hostile work environment claim was discussed at the conference, it apparently did not occur to plaintiff's counsel until preparing her opposition to defendant's motion that, indeed, absent the discriminatory termination claim, there was no argument left to avoid the conclusion that her hostile work environment claim was time-barred. That is because all of the other allegedly hostile acts occurred more than four years prior to the filing of the complaint, making them untimely, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836 (2004) (establishing that 28 U.S.C. § 1658(a)'s four-year limitations period applies to the § 1981 claims at issue here), and plaintiff needed to portray her purportedly discriminatory termination as the

2

last in a series of related hostile acts so that she could invoke the "continuing violation doctrine." See generally Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004) ("A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period; if it did, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"). In other words, only plaintiff's termination occurred within four years of the commencement of this action and, without her termination to serve as an "anchor," plaintiff's hostile work environment claim is untimely.

Based on this apparent realization, plaintiff's counsel surprisingly has chosen to disregard the concession made on the record withdrawing the discriminatory termination claim. Plaintiff's brief in opposition to defendant's summary judgment motion now wrongly seeks, at best, to portray the concession as merely agreeing to put that claim "on hold," pending the determination of defendant's motion as to the hostile work environment and retaliation claims. Compounding her distortion of the record, she offers the same hearsay evidence to show the supposed viability of the discriminatory termination claim that her counsel had agreed at the hearing could not be offered for that purpose because it was inadmissible, without offering any argument to show that it is admissible.[2] Therefore, there is nothing in plaintiff's opposition to this motion that makes her discriminatory termination claim any more viable than when her counsel withdrew it at the hearing.

---

[2] Specifically, plaintiff refers to her testimony that she was told by co-workers that Ron Sampath, a supervisor who eventually initiated her termination, wanted to replace the mechanics on the third-shift (all of whom are non-Mexican minorities) with Mexicans because they work harder. This testimony is hearsay and, thus, inadmissible. Fed. R. Evid. 802. Likewise, plaintiff's statements about how she was treated by another supervisor, Vito Caravella, and comments that Caravella made to her also constitute inadmissible hearsay, or are based on plaintiff's personal feelings. The allegations in plaintiff's complaint about being the target of racial slurs and comments also do not constitute admissible evidence. See Newton v. City of New York, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("A complaint is not evidence, except insofar as it contains admissions. On a motion for summary judgment, each party must proceed on the basis of admissible evidence.").

Lest there be any doubt by plaintiff's counsel, let me make it clear once again: the discriminatory termination claim was withdrawn at the hearing and remains withdrawn. It was withdrawn because counsel said so, and he said so because neither at the hearing nor in her misconceived opposition to defendant's motion has plaintiff produced admissible evidence to satisfy the fourth prong of the standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), for establishing a *prima facie* case, i.e., there is no admissible evidence suggesting that plaintiff was terminated as a result of racial discrimination. See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 492 (2d Cir. 2010) (requiring a plaintiff to show, among other things, that "the adverse action took place under circumstances giving rise to the inference of discrimination").

A concession in open court is fully binding on a represented party, see Lowy v. Bay Terrace Co-op. Section VIII, Inc., 869 F.2d 173 (2d Cir. 1989). "Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." Ali v. Reno, 22 F.3d 442, 446 (2d Cir. 1994) (parentheses, internal quotation marks, and citation omitted). See also Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L. Ed. 539 (1880) ("The power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced."); 4 John Henry Wigmore, Evidence in Trials at Common Law § 1063, at 67 (Chadbourn rev. 1972) ("[t]he concessions of attorneys of record bind their clients in all matters relating to the trial and progress of the cause") (quoting Truby v. Seybert, 12 Pa. 101, 105 (1849)) (internal quotation marks omitted). It cannot be the case that the parties can file with the Court detailed letters stating their respective positions, come to court to argue their positions, agree to the scope of the motion, and then remain free to disregard the

4

entire hearing. That would be the equivalent of parties appearing before the Staff Counsel in the Second Circuit and agreeing upon the narrowing of their claims, and then disregarding their agreement and proceeding to brief the appeal as if the conference had never occurred. A premotion hearing falls under the provisions of Rule 16, and concessions made at the conference for the purpose of narrowing the issues in a case are fully binding in subsequent proceedings. See 6A Wright & Miller et al., Federal Practice and Procedure §1527 (3d ed. 2013) ("Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference binding for purposes of the trial. This practice furthers the Rule 16 policy of limiting the trial to those issues that are actually in dispute without impairing the basic rights of the litigants") (footnotes omitted). Cf. NRT Metals, Inc. v. Manhattan Metals (Non-Ferrous) Ltd., 576 F. Supp. 1046, 1053 (S.D.N.Y. 1983) ("The policy behind Rule 16 – to limit the trial to those issues that are actually in dispute – would be crippled were pre-trial orders held to have no binding effect upon the parties.").[3]

With this conclusion, the disposition of plaintiff's hostile work environment claim is unavoidable. Even plaintiff seems to recognize that once the discriminatory termination claim is withdrawn, the hostile work environment claim fails under the statute of limitations. There is not a single other hostile event alleged to have occurred within four years of the filing of this action.

Finally, I note that even if plaintiff had not withdrawn the discriminatory termination claim, that claim could not serve as the foundation for plaintiff's continuing violation theory of a hostile work environment. An employee's termination is the paradigmatic "discrete act" that cannot be part of a hostile work environment claim. See, e.g., Brown v. Dep't of Educ., No. 10

---

[3] Although the Court "may relieve counsel from any statement or stipulation made during a [pretrial] conference in order to prevent injustice," 6A Wright & Miller, Federal Practice and Procedure §1527, the flaws in plaintiff's discriminatory termination claim, coupled with the absence of admissible evidence to support it, lead the Court to conclude that there is no basis for relieve plaintiff from the withdrawal of her discriminatory termination claim.

Civ. 5023, 2012 WL 1319859, at *4 (S.D.N.Y. Apr. 11, 2012) (holding that plaintiff's "termination . . . is a 'discrete act' of alleged discrimination and therefore [is] unable to 'pull in' her earlier hostile work environment allegations."). Plaintiff's hostile work environment claim is accordingly dismissed as time-barred.

## II. Retaliatory Termination

### A. Factual Background

Plaintiff began working as a mechanic for defendant in 2003. She acknowledges, as she must on this record, that she had a problem with timely reporting to work, which she attributes to her parental obligations. Defendant maintains an Attendance Control Program ("ACP"), which it negotiated with plaintiff's union. The policy calls for a graduated disciplinary measure if an employee is either absent, late arriving, or early leaving at least 7% of available workdays in a calendar year quarter.

Under this program, plaintiff received an oral warning that she had exceeded the percentage limits of the ACP on April 13, 2004. She received a final written warning for subsequent violations on August 4, 2004. This final warning apparently was not final because plaintiff received another final written warning for ensuing violations on October 21, 2004, and yet another final written warning on February 6, 2006. Then on November 21, 2006, after more attendance issues, plaintiff, her union, and defendant signed what is known as a "Last Chance Agreement," which provided that "[a]ny future infraction by [plaintiff] which violates the Company's Attendance Policy shall warrant immediate termination." There was no expiration date on the agreement. Plaintiff asserts that she held the belief that the agreement had a one-year term, although there is no evidence in the record as to the basis for her belief or whether she expressed that belief to anyone prior to her termination.

6

The protected activity upon which plaintiff relies for her retaliatory discharge claim arose out of an incident on September 6, 2007. On that day, plaintiff's supervisor, Vito Caravella, sent plaintiff home when he claimed she did not respond to his calls on her handheld radio. Plaintiff, however, was on a break at the time of these alleged calls, and was in fact standing in front of the plant. Plaintiff was not disciplined for the incident. However, she complained about being unreasonably sent home, first anonymously to defendant's employee hotline on September 12, 2007, and then in writing to defendant's Human Resources Manager, on September 19, 2007 – a writing in which she disclosed that she was the anonymous caller on September 12. In her two complaints, plaintiff made the following points, among others: (1) her supervisors did not want her to work for them because she was a female; (2) Caravella used a lot of profanity and yelled at plaintiff after she told him she had an accident and needed to go to the bathroom; (3) Caravella told her she "should go back where she came from" and that "she should be paid on the lower scale"; and (4) plaintiff had not received adequate training.

The September complaints alluded to earlier flare ups between plaintiff and Caravalla, as well as her department manager, Ron Sampath. These relationships had indeed been troubled. At various times from the end of 2004 up through the September 6 incident, plaintiff had complained about various incidents involving Caravello, Sampath, or her co-workers. These complaints either preceded or were followed (depending on when one starts counting) by various disciplinary measures or criticisms made against plaintiff. For example, in 2004 she complained that she had an "unfair" workload as compared to male mechanics. She also asserted that she was disciplined for taking a 60-minute lunch in April 2005 right after she had complained about her treatment, even though she had never taken a 60-minute lunch.[4]

---

[4] These incidents form part of the basis for plaintiff's time-barred hostile work environment claim.

After her September 2007 complaints, plaintiff continued to have attendance problems during that last quarter of 2007; she was late four days during that quarter. December 2007 was a very short month for plaintiff (and other mechanics) because of seasonal layoffs, which plaintiff does not contend were discriminatory or retaliatory. As a result of the layoffs, plaintiff's absent/late days constituted a higher proportion of available "working days," as defendant and the union defined them, than those days would have had plaintiff worked the entire quarter (assuming, of course, that plaintiff would not have been late or absent on almost all of those extra work days). The shortened quarter gave plaintiff a 9.1% incident rate, and defendant, at the instigation of Sampath, enforced the Last Chance Agreement on January 23, 2008 and terminated plaintiff.

Plaintiff and her union grieved the termination. The parties mutually selected a highly experienced labor arbitrator. Defendant relied on the terms of the Last Chance Agreement. Plaintiff, through an attorney appointed by the union, argued that the Last Chance Agreement, which was more than a year old by that time, was stale and should not be so rigorously enforced; that she had car trouble in the last quarter of 2007 which she had documented; and that the car had been fixed and she would not be late again.

The arbitrator, in a reasoned decision dated February 18, 2008, upheld plaintiff's discharge. He found that plaintiff was "remorseful concerning her tardy record" but rejected her argument that the age of the Last Chance Agreement meant it should not be enforced:

> Union counsel's argument might have some validity if Grievant had maintained a tardy-free record for the first three quarters of 2007. However, that was far from being the case. Grievant's tardy/early leave percentage for the first three quarters of 2007 are 5.2%, 5.6%, and 6.5%, respectively. If Grievant had one more lateness during the third quarter, she would have been terminated then as her tardy percentage would have exceeded 7%.

8

> The Last Chance Agreement is clear and unambiguous. Grievant was on notice as to what she could not do tardiness-wise. Despite such knowledge, Grievant exceeded the 7% maximum in the fourth quarter of 2007 thereby automatically triggering the termination provision of the Last Chance Agreement.

Plaintiff filed this action in Queens Supreme Court under 42 U.S.C. § 1981 just days before the expiration of the four-year statute of limitations, and defendant removed the case to this Court.

B. Analysis

The applicable standard for proving retaliation under 42 U.S.C. § 1981 is the familiar burden shifting test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932–33 (2d Cir. 2010). The McDonnell Douglas test requires that, first, the plaintiff establish a *prima facie* case of retaliation. To establish a prima facie case of retaliation, the plaintiff must:

> adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected [activity] under [the anti-discrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). If the plaintiff satisfies these criteria, the burden shifts to the defendant to produce a non-retaliatory reason for the allegedly adverse action. Then, if the defendant satisfies this step, the plaintiff must prove that "more likely than not the employer's decision was motivated, at least in part, by an intent to retaliate against him." El Sayed, 627 F.3d at 933.

Defendant acknowledges that plaintiff has satisfied the first three requirements of her *prima facie* case. The issue is over the fourth requirement, and the use of temporal proximity in establishing it. With regard to the establishment of a *prima facie* case through temporal

9

proximity, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (quoting Gorman–Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001)). Instead, the Second Circuit has directed district courts "to exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." Espinal, 558 F.3d at 129. This is a rather imprecise directive as to an issue that is supposed to be resolvable as a matter of law (or not) and which arises with great frequency, as claims of illegal retaliation occur in a variety of contexts. It is, therefore, not surprising that the exercise of such judgment by courts has produced district court and even Circuit decisions that are all over the map with regard to how temporally distant protected activity may be from the adverse action to support or refute a reasonable inference of causation, and every time the issue arises, litigants can choose from a broad array of case law to find cases that support their position. Compare Espinal (six months not too long) with Hollander v. American Cyanamid Co., 895 F.2d 80, 85–86 (2d Cir.1990) (three months too long). One could assert with some force that this case-by-case weighing of factual circumstances compels a re-evaluation of whether this is a proper exercise in the context of summary judgment analysis.

     The imprecision extends to the role of temporal proximity in applying the fourth factor of McDonnell Douglas' *prima facie* case as opposed to considering temporal proximity in the third step of the McDonnell Douglas analysis. See Aka v. Jacob K. Javits Convention Ctr., No. 09 Civ. 8195, 2011 WL 4549610, at *9 (S.D.N.Y. Sept. 30, 2011) ("Mere temporal proximity between a plaintiff's protected activity and an adverse employment action is sufficient to create an inference of retaliation for purposes of proving a *prima facie* case. However, temporal

10

proximity, without more, 'is insufficient to satisfy [the plaintiff's] burden to bring forward some evidence of pretext' at the third stage of the McDonnell Douglas inquiry.") (internal citations omitted). In El Sayed, 627 F.2d at 932-33, the Second Circuit assumed *arguendo* that plaintiff had satisfied his burden of showing a *prima facie* case by reason of a three week gap between his protected activity and his termination, but dismissed the claim because plaintiff had shown nothing more than that temporal proximity. This seems a sensible approach and illustrates that in analyzing retaliation claims, the parsing of the fourth factor in the *prima facie* case from the third step in the showing required to raise a factual issue often serves little practical purpose. The case also confirms the principle that temporal proximity alone is rarely if ever enough to raise a factual issue of retaliation sufficient to prevent summary judgment.

On that basis, I will go right to the third step of the McDonnell Douglas analysis and determine whether plaintiff has offered sufficient evidence of pretext or other circumstantial evidence of retaliation in her firing sufficient to raise a factual issue. I should note that in doing this, I am also breezing through defendant's required showing at the second step of McDonnell Douglas, as I find the record is patently clear that plaintiff violated the ACP in the fourth quarter of 2007, which gave defendant a legitimate nondiscriminatory reason to terminate her under the Last Chance Agreement. Although plaintiff raises various arguments about the policy's "rounding" of tardy incidents up or down to the nearest integer, and the unfair effect of her shortened December work month, the policy remains clear and defendant's application of it was technically correct. Plaintiff's arguments go more to the question of whether the rigorous enforcement of the ACP and the Last Chance Agreement was a pretext for doing that which defendant was lying in wait to do at its earliest opportunity, an argument that is, in any case, properly raised at the third step of the McDonnell Douglas analysis.

11

Proceeding, then, to the third step of McDonnell Douglas, I have considered all of the record evidence and assessed whether there is any way a jury could reasonably find that plaintiff was terminated in retaliation for her September complaints. Starting with the issue of temporal proximity, it is ironic, and typical, that each side contends that the timing supports their position. Plaintiff thus points out that it was "only" four months between complaint and termination, which to her suggests retaliation, with case law support for that conclusion, while defendant notes my observation at the premotion hearing that four months seems like a long time to lie in wait and buttresses that observation with reference to other cases.

I think temporal proximity in this case is a wash. Four months may or may not be a long time to retaliate, depending on the circumstances. But neutralizing this factor does not help plaintiff. Even if I concluded that the temporal proximity factor weighed in plaintiff's favor, a jury could not render a verdict in for plaintiff based solely on this factor. See El Sayed, 627 F.3d at 933 ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). The question thus becomes what other evidence could plaintiff put in front of a jury that would allow it to reasonably find that the Last Chance Agreement was invoked as a pretext or that she was fired in retaliation for her protected activity?

There is not much. Plaintiff first notes the technical nature of the ACP in terms of rounding of late days, but I have already found, like the arbitrator, that notwithstanding the drafting limitations of the ACP, there is only one reasonable way to read it – the way defendant reads it. I could not allow a jury to find otherwise based on the language of the ACP. Indeed,

plaintiff has offered no other reasonable interpretation of the agreement; she simply points to its inartful drafting.

Of course, even allowing plaintiff's argument and rounding her days down instead of up would have no effect without accepting her second point, namely that she should have been given a break because of the layoff-shortened December month had an impact on her absence calculation under the ACP. In other words, plaintiff asks the Court to assume that December had not been a shortened month and that she would have been on time for every extra workday that would be added to the quarter as a result. (This is a somewhat dubious assumption because it would require an attendance record superior to what plaintiff actually had for the entire year. Since, however, plaintiff is opposing summary judgment, she is entitled to every inference). Under plaintiff's requested assumption, she would have a 6.45% absence rate for the fourth quarter of 2007, which would be rounded down to 6% – below the 7% threshold required by the ACP to appropriately impose discipline. Significantly, however, plaintiff does not dispute that she was treated the same as the other mechanics that month nor that seasonal layoffs were the norm for this business. And, under the terms of the ACP, defendant was allowed to exclude layoff days in calculating plaintiff's absence/tardiness rate.

Plaintiff asserts that the ACP was confusing and that she was not aware of its precise operation. She also asserts, without basis, that she thought the Last Chance Agreement only ran through November 2007. These arguments miss the point. The record is clear that, unlike defendant, plaintiff was not counting her tardy/absence days. She reported to work on time when she could and she did not when she could not – which was a lot. In no way does plaintiff's failure to understand the ACP imply that defendant improperly invoked the policy and the Last Chance Agreement to punish her for her complaints in September.

Plaintiff also argues that the ACP allowed defendant to exercise discretion, and considering her bad history with Sampath and the undisputed fact that he was the one who recommended her termination, a jury could reasonably find that her September complaints were a substantial factor in defendant's decision to invoke the Last Chance Agreement.  This is a hard road to hoe for a former employee who was subject to an oral warning for violating the ACP, three final warnings, and a Last Chance Agreement.  Plaintiff protests that some of her attendance problems were inaccurately recorded or trivial, and that she entered into the Last Chance Agreement under pressure.  Even if these claims are credited, they do not overcome their cumulative effect of plaintiff's attendance problems in evaluating defendant's invocation of the Last Chance Agreement, especially since plaintiff has offered no evidence that she even attempted to grieve any of these issues, and the record certainly demonstrates that plaintiff knew how to complain when she wanted, despite her professed reluctance to do so.

Moreover, plaintiff has failed to show that anyone other than Sampath *could* have recommended invocation of the Last Chance Agreement concerning plaintiff.  Sampath was, after all, the manager of plaintiff's department.  It would be a dangerous precedent to hold that where there is a documented history of violations of a company's documented attendance policy, a troubled history with the boss is nonetheless sufficient to get a case before a jury as to improper retaliation.  To overcome that prospect, there must be something more about the "troubled history" with the boss, specifically some evidence of illegal conduct or motivation – not just that the boss is an unreasonable boss, even a horribly unreasonable boss.  Otherwise, the case falls within the numerous discrimination cases holding that incivility alone is not actionable.  See, e.g., Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.

14

It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."); Sanchez-Vazquez v. Rochester City Sch. Dist., No. 11-CV-6590, 2012 WL 2856824, *3 (W.D.N.Y. July 11, 2012) ("Section 1981 and other employment discrimination statutes do not establish a general civility code for the workplace."). It remains the case that the "boss from hell" has not, without more, violated federal law.

     Plaintiff's effort to demonstrate illegal conduct or motivation fails for the same reason that she withdrew her discrimination claim. That is, although no rational person would want a boss like plaintiff describes Sampath (and I assume her description to be true for purposes of this motion), there is no admissible evidence that he or any other representative of defendant involved in her termination had any improper motivation under federal law. Plaintiff seems to claim that her co-workers' alleged hostile conduct (reprising her time-barred hostile work environment claim), plus one statement from Caravella that she should "go back where she came from," show retaliatory animus, but she has produced no evidence that any of these people had input into the decision to terminate her.

     The paucity of plaintiff's proof on this issue is most exposed when she attempts to resurrect a statement that Sampath allegedly made, going so far as to describe this statement as her "most damning" evidence in support of her retaliation claim. The statement attributed to Sampath is that he wanted to replace the mechanics on plaintiff's shift (mostly black) with Mexicans because Mexicans work harder. The problem with this statement (and the reason she withdrew her discrimination claim at the premotion conference) is that there is no admissible evidence that Sampath ever made it. Plaintiff does not claim she ever heard him say it. She contends, instead, that several other employees heard him say it and they told her about it on

15

some unspecified date. But despite extensive pretrial discovery in this case, plaintiff has not obtained affidavits or deposition testimony from these alleged witnesses, and her second-hand rendering is obviously inadmissible hearsay. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) ("while second-hand comments may be relevant, a district court deciding a summary judgment motion must be provided with admissible evidence demonstrating the truth of the non-movant's assertions."). I thought plaintiff's attorney agreed with this conclusion, at least he said that he did at the premotion hearing, and we expressly agreed that this purported evidence would not be included in his summary judgment opposition. Yet here it is again, suffering from the same evidentiary failing as it did at the premotion hearing.

Accordingly, plaintiff has offered insufficient evidence upon which a jury could reasonably find that an intent to retaliate against her for her September complaints was a substantial factor in her termination. But there is more.

Under the Second Circuit's decision in Collins v. New York City Transit Auth., 305 F.3d 113, the arbitration ruling against plaintiff constitutes substantial evidence against a finding of retaliatory motive in the context of a motion for summary judgment. Plaintiff attempts to avoid the arbitrator's decision by pointing out that she did not assert her claims of retaliation in that proceeding and that her union attorney could have done a better job. Neither of these responses is sufficient. The case law is clear that the failure to raise Title VII claims in the context of a labor arbitration does not deprive the award of its evidentiary force under Collins, see, e.g., Simpson v. New York State Dep't of Civil Serv., No. 02-CV-1216, 2005 WL 545349, at *16 (N.D.N.Y. Mar. 1, 2005) ("Under Collins and its progeny, failure to address the discrimination issue in an arbitration does not diminish the impact of that arbitration on a subsequent discrimination action."), and the shortcomings plaintiff attributes to her attorney are minor,

16

insufficient to negate the fact that she had a full opportunity to get her story out before a neutral arbitrator. Although this decision does not have a preclusive effect on plaintiff's Title VII retaliation claim, see Collins, 305 F.3d at 119, the arbitrator's decision that plaintiff's termination was based on a legitimate business reason complements the inadequacy of her proof of retaliatory motive.

## CONCLUSION

Defendant's motion for summary judgment [32] is granted, and the case is dismissed.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       July 1, 2013